IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE ELLIS, ) | |
| ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | No. 09 CV 2889 |
| ) | |
| CITY OF CHICAGO, *et. al.*, ) | Honorable David H. Coar |
| ) | |
| *Defendants*. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janice Ellis ("Plaintiff") brought this action against Defendants City of Chicago and Michelle Dicola ("Defendants"), alleging discriminatory employment practices under the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-2000h-6. Before this Court is Defendant's motion to dismiss all counts of Plaintiffs' First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion is GRANTED in part and DENIED in part.

I.  Background

Defendant City of Chicago hired Plaintiff, an African-American woman, as a full-time employee on or about December 21, 1993. Plaintiff became a Traffic Control Aide on or about

1

June 16, 2000. Defendant DiCola became Plaintiff's supervisor on November 1, 2007. Plaintiff alleges that the number of write-ups and suspensions since DiCola became superintendent are inconsistent with Plaintiff's prior work history.

On August 14, 2008, Plaintiff was issue a warning for a missed post check and failure to notify the dispatcher upon leaving the post. Allegedly, other non-black Traffic Control Aides were not subjected to written warnings in similar situations.

On September 11, 2008, Plaintiff wrote a letter to the Director of Traffic Control Aides expressing concern over unfair working conditions related to her "floater" status during roll call. She would later receive counseling through the city of Chicago Employee Assistance Program due to continuing stress and harassment at work, as well as medical attention for physical and stress related issues.

On December 10, 2008, Plaintiff was written up for allegedly arriving late, failure to give proper notification that she needed to be off post, and failure to follow procedure for taking "personals." Plaintiff was suspended for two calendar days. On December 17, 2008, Plaintiff was singled out and written up for a lost uniform hat. Other non-black Traffic Control Aides were allegedly not singled out in the same way.

On February 26, 2009, Plaintiff Ellis timely filed a charge of discrimination with the Equal Employment Opportunity Commission. She received her right to sue notice on the same day. Plaintiff would file her original pro se complaint on May 12, 2009.

On April 16, 2009, two black Traffic Control Aides were written up for arriving late to roll call. A non-black Aide, Patrick Ashe, also arrived late but was not written up.

On or about April 21, 2009, Plaintiff was written up for allegedly failing to report to her assigned post on time and was suspended three calendar days. Two other non-black Aides arrived late at their posts that day, but were not written up or suspended. On May 5, 2009, Plaintiff was written up for allegedly failing to report to her assigned post on time and was suspended for three calendar days. On May 20, 2009, Plaintiff was written up for allegedly failing to report to her post on time. She was suspended for five days.

On or about June 17, 2009, Plaintiff received notice that she was laid off even though she was higher on the seniority list than other non-black Aides who were not laid off. Plaintiff was informed that her suspensions had moved her down the seniority list. Plaintiff allegedly requested and was denied administrative leave. Plaintiff was reinstated as a Traffic Control Aide on or about June 18.

On August 28, 2009, two non-black Traffic control Aides allegedly left work early and did not radio in as required. They were not written up.

On September 8, 2009, Plaintiff was certified as having a serious health condition under the Family Medical Leave Act and was instructed by her doctor that she would need 2-3 days off per month due in part to stress-related symptoms.

Plaintiff alleges that she continues to be written up, radio called, and suspended repeatedly for alleged violations of city rules, while similarly situation non-black employees are not. She alleges that her race and color are motivating factors for her suspensions, and that Defendants have retaliated against her after she asserted her rights protected by law.

## II. Standard of Review

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir.1996). To survive the motion, a complaint need only describe the claim in sufficient detail to give the defendant fair notice of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). A plaintiff's factual allegations must suggest a plausible, rather than merely speculative, entitlement to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555. That is, the complaint must present "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Twombly*, 550 U.S. at 556. In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true the well-pleaded allegations, and drawing all reasonable inferences in plaintiff's favor. *Tamayo*, 526 F.3d at 1081.

## III. Analysis

### A. Count I

Because Plaintiff combined her Title VII discrimination and retaliation claims into one count, as opposed to separating them as required by Fed. R. Civ. P. 10(b), Defendants urge this Court to dismiss Count I with prejudice. Such a measure is uncalled for under the circumstances.

A complaint must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo*, 526 F.3d at 1083 (citations omitted).

Plaintiff has chronologically alleged detailed instances of discriminatory treatment suffered while in the employ of the City of Chicago, both before and after she exercised her right to file a discrimination charge with the EEOC. It does not require much imagination to infer that the adverse employment actions occurring after Plaintiff's EEOC filing, namely Plaintiff's alleged suspensions and temporary layoff, provide the basis for her retaliation claim, while Defendants' alleged discriminatory behavior as a whole, inclusive of said suspensions, serve as grounds for Plaintiff's discrimination claim.[1]

Granted, a clearer recitation of the facts supporting each claim would have been more in keeping with the requirements of Fed. R. Civ. P. 10(b), which states that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." However, none of the cases cited by Defendants go so far as to dismiss claims with prejudice when exhibiting similar, if not greater, infirmities. *See Winfrey v. Walsh*, No. 07-CV-2093, 2007 WL 2819318, at *3 (C.D. Ill. Sept. 25, 2007); *Pratt v. Ill. Dept. of* Corrections, No. 06 CV 847-JRJ, 2007 WL 1320626, at *3 (S.D. Ill. May 3, 2007). Rather, these courts merely ordered the party to amend the complaint accordingly or, in the interest of efficiency, reorganized complaints on their own initiative. *Id.* Given the relative ease with which the facts underlying Plaintiff's discrimination and retaliation claims can be distinguished, the Court opts for the latter route, construing the complaint as described above. Defendant's motion to dismiss Count I with prejudice is thus denied.

---

[1] Even if Plaintiff did not consider every alleged adverse employment action retaliatory, only one need be characterized as such in order for her retaliation claim to survive. Either way, the allegations provide adequate notice of both retaliation and discrimination claims.

**B. Counts II and III**

Defendants next argue that Plaintiff's § 1981 and § 1983 claims should be dismissed for failure to state a claim for municipal liability under *Monell v. New York City Dept. of Soc. Servs.*, 426 U.S. 658, 694 (1978).

The Court first notes that municipalities may not be held liable for employees' violations of §1981 under a respondeat superior theory. *See Von Zuckerstein v. Argonne Nat'l Laboratory*, 78 F.3d 587, 587 (7th Cir. 1996) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989)). The Supreme Court has held that § 1983 provides the exclusive federal damages remedy for § 1981 claims against state actors. *Id.* (citing *Jett*, 491 U.S. at 735-36). Because Plaintiff has no viable, independent cause of action against Defendants under 42 U.S.C. § 1981, Count III is dismissed.

As for Count II, a plaintiff seeking to establish municipal liability under § 1983 must "present sufficient evidence to show that the constitutional violation resulted from a municipal policy, custom, or practice." *Waters v. City of Chicago*, 580 F.3d 575, 580 (7th. Cir. 2009) (citing *Monell*, 426 U.S. at 694). This can be accomplished by showing (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Id.* at 581 (citing *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (quotations omitted).

Nowhere in her complaint does Plaintiff allege that an express discriminatory policy exists or that Superintendent DiCola is a "policymaker." Plaintiff in her brief speculates that

DiCola might have "final policymaking authority," but fails to allege as much in her complaint. The argument would fail in any event, given Seventh Circuit precedent.

State or local law determines whether a person has policymaking authority for purposes of § 1983. *See Waters*, 580 F.3d at 581. The Seventh Circuit has found that, in Chicago, the City Council and Commissioner of Human Resources are "final policymakers for the City in the area of employment." *Id.* While department heads like Superintendent DiCola have the authority to fire employees, their decisions are constrained by "Personnel Rules" promulgated by the City Council and Human Resources Commissioner. *See id.* at 583. DiCola's decisions are also subject to review by the Personnel Board and the Law and Personnel Departments for compliance with the City's rules. *See id.* As such, department heads like Defendant DiCola lack "final authority to make employment policy for the City." *Id.* A plaintiff could conceivably avoid dismissal on this issue by alleging that a defendant has somehow been delegated this policymaking authority, but no such allegation has been made in the instant complaint. *See Kujawski v. Board of Comm'rs*, 183 F.3d 734, 739 n. 4 (7th Cir. 1999) (holding that statutes are not necessarily determinative of a delegation issue).

Plaintiff additionally argues that she has made adequate allegations to indicate "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice." *Waters*, 580 F.3d at 581. "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice. The longstanding or widespread nature of a particular practice would support the inference that policymaking officials 'must have known about it but failed to stop it.'" *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993) (internal quotation marks and citations omitted).

To survive a motion to dismiss on a § 1983 municipal liability claim, Plaintiff must allege operative facts forming the basis of the claim. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). In this context, even generic "boilerplate" allegations pled in a conclusory fashion are likely to pass muster. *See id.* at 322-25 (finding allegation that "highest policymakers" allowed "a widespread custom of allowing white police officers in predominately white districts, to engage in individual acts of discrimination against African-Americans, without fear of vigorous and effective enforcement of City anti-discrimination policies" was sufficient to state a claim of municipal liability under § 1983); *Carpanzano v. College of DuPage*, No. 03 C 4358, 2003 WL 22889432, at *2 (N.D. Ill. Dec. 8, 2003) (finding allegation that "[t]he actions of [defendants], along with other [unnamed] policymaking officials . . . evinces a widespread policy or custom of disciplining and/or terminating employees who speak out on matters of public concern" adequate to establish a § 1983 claim).

Yet, notably absent from Plaintiff's complaint is any mention of a municipal custom or practice, or, for that matter, any statements relating to the knowledge or actions of policymakers. Even conclusory statements in the vein of *McCormick* and its progeny do not appear. The only allegation beyond Plaintiff's personal experiences describes two other black Traffic Control Aides who were written up on April 16, when another non-black Aide was not.[2] Assuming for

---

[2] A plaintiff's isolated personal experiences cannot alone establish a municipal liability claim; the complaint must give some indication that others in the plaintiff's protected class suffer the same discrimination. *See Nebel v. City of Burbank*, No. 01 C 6403, 2003 WL 1606087, at *6 (N.D. Ill. Mar. 27, 2003) (stating that generally, "a plaintiff's own isolated experiences are not enough to state a claim for municipal liability under a custom and practice theory" and collecting cases). Nor do Plaintiff's allegations of non-black employees evading discipline, when she did not, establish with any greater persuasiveness that other black employees shared her experience. After *Bell Atlantic Corp. v. Twombly*, the Seventh Circuit found that "it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo*, 526 F.3d at 1084 (quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 560-63, 55-56)). Even though the failure to discipline other non-black employees on some occasions is "logically consistent" with discrimination against African-Americans, it does not, absent additional allegations, "*suggest* that possibility any more than money changing hands suggests robbery." *Id.* at 1083 (quoting *Concentra*, 496 F.3d at 777).

8

the sake of argument that this adequately alleges a policymaker's knowledge and acquiescence, or a practice so widespread that it would "support the inference that policymaking officials 'must have known about it but failed to stop it,'" *McNabola*, 10 F.3d at 511, the scope and nature of the implied municipal practice remain a mystery.  Is the claim reliant on the failed argument that Defendant DiCola is a policymaking official, or is Plaintiff implicating other policymakers in the alleged municipal practice?  Is Plaintiff alleging that Defendant City's policymakers refuse to discipline non-black employees for legitimate transgressions? Or is the municipal custom comprised of falsely disciplining black employees for invented violations?  Is the alleged custom limited to write-ups for tardiness? Or does discriminatory behavior extend to all disciplinary decisions made by department heads throughout the City of Chicago?

A complaint must provide "sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Concentra*, 496 F.3d at 776 (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  Stated differently, it must "contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." *McCormick*, 230 F.3d at 323-24.  Here, due to a paucity of basic operative facts and details, the Court, much less the Defendants, is unable to surmise the gravamen of Plaintiff's § 1983 municipal liability claim.  *See id.* at 325 (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). As such, Count II must be dismissed.

### IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendants' motion to dismiss Counts II and III is GRANTED.  Defendants' motion to dismiss Count I is DENIED.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **January 20, 2010**