IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE ELLIS, | ) |
| *Plaintiff*, | ) |
| v. | ) No. 09 CV 2889 |
| CITY OF CHICAGO, *et al.*, | ) Honorable David H. Coar |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janice Ellis ("Ellis") brought this action against Defendants City of Chicago (the "City") and Michelle DiCola ("DiCola") (collectively "Defendants"). On January 20, 2010, this Court dismissed Ellis' claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. [Dkt. 44.] Presently before this Court is Defendants' motion for summary judgment, [Dkt. 47], on Ellis' remaining claims of discrimination and retaliation on the basis of race and color under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000h-6. For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

## FACTS

*Pro se* litigants are generally entitled to a level of deference not otherwise afforded to ordinary litigants represented by counsel. *See e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*) (requiring liberal construction of *pro se* litigant pleadints). Nevertheless, "pro se

litigants are not entitled to general dispensation from rules of procedure or court-imposed deadlines." *Downs v. Westfal*, 78 F.3d 1252, 1257 (7th Cir. 1996); *see also Members v. Paige,* 140 F.3d 699, 702 (7th Cir.1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"); *Greer v. Bd. of Educ., of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001) (holding that a *pro se* plaintiff should comply with Local Rule 56.1).

In accordance with the Court's order, the City delivered notice to Ellis describing Local Rule 56 in plain English, outlining the consequences of a failure to respond to its motion. *See Timms v. Frank,* 953 F.2d 281, 285 (7th Cir. 1992). Despite having received this notice, Ellis has failed to file a response to Defendants' motion for summary judgment or Rule 56.1 statement of material facts. "[A] failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003); *see also Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992) (holding that, if the non-movant fails to file a timely statement of disputed material facts, uncontroverted statements in moving party's statement in support of summary judgment are deemed admitted); *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Rule 56.1], those facts are deemed admitted for purposes of the motion."). Accordingly, all of Defendants' statements fairly supported by the evidence are deemed admitted. The facts as presented by Defendants are as follows.

Ellis is an African-American woman who works for the City as a Traffic Control Aide ("TCA") in the Office of Emergency Management and Communications ("OEMC"). (Defendants' Rule 56.1 Statement of Undisputed Facts ("SOF") ¶ 1). Her duties and

responsibilities as a TCA include reporting for roll call and promptly reporting to her post immediately following roll call. (SOF ¶ 18.)

On December 10, 2008, Ellis arrived late to her post. (SOF ¶ 39.) Doing so violates City Personnel Rules. (*Id.*) OEMC Superintendent of Special Traffic Services, Michelle DiCola, initiated a complaint investigation ("C.I.") against Ellis for reporting to work 45 minutes late, failure to give proper notification of a late arrival, and failure to follow procedures for taking "personals." (*Id.*) On February 12, 2009, Ellis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on her race. (SOF ¶ 4.)

On April 21, 2009, Ellis again arrived late to her post. (SOF ¶ 40.) DiCola initiated another C.I. and Ellis was suspended for three days as a result. (*Id.*) On May 5, 2009, Ellis arrived late to her post. (SOF ¶ 42.) TCA Supervisor Nicole Iozzo initiated a C.I. against Ellis for that infraction. (*Id.*) Ellis was suspended for three days. (*Id.*)

On or about May 12, 2009, after receiving her right to sue letter, Ellis filed a *pro se* complaint against Defendants before this Court. (SOF ¶ 4; Compl. at 1.) On May 20, 2009, Ellis arrived late to her post. (SOF ¶ 43.) TCA Supervisor Verna Thompson initiated a C.I. against Ellis, resulting in a five-day suspension. (*Id.*) On November 13, 2009, TCA Supervisor Iozzo filed another C.I. against Ellis when she did not follow City directives and procedure by being inattentive to her radio. (SOF ¶ 44.)

Ellis alleges that DiCola reports her infractions, and that the City subsequently disciplines her, more frequently than Defendants punish non-black TCAs engaging in the same behavior. (Am. Compl. ¶35-37.) Ellis also alleges that Defendants have retaliated against her for filing an EEOC complaint and Title VII lawsuit. (Am. Compl. ¶ 38-39.)

Ellis admits that DiCola has never made any racially derogatory comments to her or called her any names. (SOF ¶ 50.) Nor has Ellis heard DiCola use racial slurs or refer to racial stereotypes. (SOF ¶ 52; Ellis Dep. 61:5-22.) Ellis felt that DiCola referred to African Americans in a derogatory way when selecting a name for an office holiday grab bag. (SOF ¶ 51.) Ellis overheard DiCola asking, "What if you pick someone name that you don't like?" before pulling the name of an African-American whom Ellis believes gets written up all the time. (Ellis Dep. 55:13-58:1.) DiCola also giggled once when a disabled African-American employee said "Jesus" or "God thank you" in the workplace. (*Id.* at 61:9-62:5.)

DiCola was not served with summons and a copy of the complaint; the process server left these documents under her name at the City Clerk's Office. (SOF ¶ 3); [Dkt. 8].

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the

light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

The Court must now determine whether the Defendant is entitled to judgment as a matter of law in light of the uncontested facts. As an initial matter, any Title VII claims against DiCola in her individual capacity fail because a supervisor is not an "employer" under Title VII. *See Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). In addition, it appears that DiCola has not been properly served. (SOF ¶ 3); [Dkt. 8]; Fed. R. Civ. P. 4(e), (m); 735 ILCS 5/2-203. Because Ellis did not specify the capacity in which DiCola is sued, the Court shall assume that Ellis sues her in her official capacity. *See Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). A suit against DiCola in her official capacity is tantamount to a suit against the City. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Title VII forbids workplace discrimination against an employee "with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race [and] color . . . ." 42 U.S.C. § 2000e-2(a)(1). Also prohibited is discrimination against an employee for opposing an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff may prevail on an employment discrimination or retaliation claim either by presenting evidence of an impermissible motive or by way of the indirect, burden-shifting

5

method. *Krchnavy v. Limagrain Genetics Corp.,* 294 F.3d 871, 875 (7th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-03 (1973)).

Under the direct method, Ellis must show that she suffered an adverse employment action as a result of her race or protected conduct. *See Sylvester v. SOS Children's Vills. Ill., Inc.,* 453 F.3d 900, 902 (7th Cir. 2006). She can accomplish this by providing either direct or circumstantial evidence pointing to an improper reason underlying the City's disciplinary actions. *See Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008). However, the facts as provided by the City do not suggest that Ellis was suspended or otherwise disciplined because of her race, her EEOC charge, or her Title VII lawsuit. To the contrary, all evidence points to Ellis' chronic tardiness as the reason for her C.I.s and suspensions. On the retaliation count, Ellis has not shown that any OEMC employee involved in her disciplinary actions was even aware that she had filed an EEOC complaint or Title VII lawsuit. (SOF ¶ 54-55.) Ellis's claims cannot succeed under the direct method.

Ellis has no case under the indirect method, either. To prove discrimination under the burden-shifting method, Ellis must establish that that she belongs to a protected class, met the City's legitimate performance expectations, suffered an adverse employment action, and was treated worse than similarly situated employees outside the protected class. *See Tyson v. Gannett Co., Inc.,* 538 F.3d 781, 783 (7th Cir. 2008). Her retaliation claim requires the same showing, with the exception that, instead of proving protected class membership, she must show engagement in statutorily protected activity. *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005).

Ellis has failed to produce any evidence suggesting that she met the City's legitimate employment expectations. The undisputed facts reveal that she repeatedly arrived late to her

posts, in violation of her duties as TCA and the City's Personnel Rules.  Ellis has further failed to identify similarly situated, non-black employees who escaped discipline for similar violations of the City's Personnel Rules, or who were not disciplined for comparable conduct after filing EEOC charges or legal complaints.

At most, Ellis testified that, on the same day that she was late to her post in April 2009, she observed that two non-black TCAs were also not at their posts.  (Ellis Dep. 127:15-24.)  But Ellis conceded that it was possible that no supervisor observed the other TCAs' absences.  (*Id.* at 128:8-22.)  Ellis further admitted that she did not know for certain whether or not the two non-black TCAs were ultimately disciplined. (*Id.* at 128:23-129:5.)  Additionally, Ellis testified that, on April 16, 2008, two African American co-workers were written up for arriving late to roll call when Patrick Ashe, a non-black co-worker, was not written up for the same infraction. (*Id.* at 109:7-110:6.)  But Ellis herself was never disciplined for being late to roll call, only for arriving late at her post. (SOF ¶ 38-44.)  Even if the Court were to conflate the two acts, Ellis was not present at roll call on April 16, thus rendering her description of the event inadmissible hearsay. (Ellis Dep. 58:7-11.)  A reasonable juror could not conclude from the undisputed facts that Ellis was treated differently than similarly situated employees.  Ellis thus fails to establish a prima facie case for employment discrimination or retaliation.

Ellis' evidentiary shortcomings are unsurprising, given that she has not opposed the City's motion.  Because the Court cannot identify any genuine issues of material fact, Defendants are entitled to summary judgment on Ellis' Title VII claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on Count I is GRANTED.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **April 15, 2010**